UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF EVANSTON, an Illinois municipal corporation, | ) ) ) | 13 C 2106 |
| Plaintiff, | ) ) | Judge Feinerman |
| vs. | ) ) | |
| TEXACO, INC, a Delaware corporation, CHEVRON CORPORATION, a Delaware corporation, CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY, a California corporation, and E-TOWN COMMUNITY VENUTRES, LLC, an Illinois limited liability company, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The City of Evanston, Illinois, filed this suit initially against Chevron U.S.A. Inc. and E-Town Community Ventures, alleging that they are responsible for contamination on and around a property in Evanston formerly occupied by a gasoline service station. Doc. 1. After questions were raised as to whether Chevron U.S.A. was a proper defendant, Evanston filed an amended complaint that kept E-Town as a defendant, dropped Chevron U.S.A. as a defendant, and added Chevron Corporation, Texaco, Inc., and Chevron Environmental Management Company ("Chevron EMC") as defendants. Doc. 24. The three new defendants—which are affiliated and represented by the same lawyers, and which have filed joint pleadings—will be referred to collectively as "Chevron" unless the context requires otherwise. Count I of the amended complaint is a citizens suit under 42 U.S.C. § 6972(a) that seeks declaratory, injunctive, and other ancillary relief against Chevron for alleged violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* Doc. 24 at pp. 8-10. Counts II- IV allege

1

claims against Chevron and E-Town under the Illinois common law of trespass and private nuisance and the Evanston Hazardous Substances Ordinance. Doc. 24 at pp. 11-14.

Chevron has moved to dismiss Counts I-IV under Federal Rule of Civil Procedure 12(b)(6). Doc. 29. E-Town has joined Chevron's motion with respect to Counts II-IV. Docs. 32, 35. The motion is denied in its entirety.

**Background**

In considering the motion to dismiss, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [amended] complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Evanston's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Evanston as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

From 1925 to the late 1990s, a gasoline and auto repair service station, most recently operated by Texaco, occupied the northeast corner of the intersection of Church Street and Darrow Street in Evanston (the "Texaco Station"). Doc. 24 at ¶¶ 2, 24-25. Texaco used underground storage tanks ("USTs"), "gasoline dispenser islands," and piping under the station, as well as an "auto lift and grease pit." *Id*. at ¶¶ 25-26. In the 1960s, during Texaco's operation of the station, contaminants were leaked from at least two USTs. *Id*. at ¶¶ 27-30. The Texaco Station has been vacant since the late 1990s. *Id*. at ¶ 24. E-Town acquired legal title to the property in April 2002. *Id*. at ¶ 18.

In the meantime, in 2000, the Illinois State Fire Marshal conducted an "exploratory excavation" of the Texaco Station. *Id*. at ¶ 31. The Fire Marshal issued a Notice of Violation, concluding that "[a]t least two unregistered USTs were abandoned improperly" and that the "USTs contained water and gasoline" and were "leaking in close proximity to a sewer." *Id*. at ¶ 31 & pp. 18-19. In April 2001, the Fire Marshal issued a report stating: "[N]othing has been done to this site. The tanks are still leaking and no caps are on the vents, fills[,] or product lines. They are continuing to take on water." *Id*. at ¶ 32.

In March 2012, an environmental consultant hired by Evanston issued a report noting the presence of petroleum exceeding the amounts allowed by state regulations. *Id*. at ¶ 35 & pp. 23-73. A subsequent report issued in July 2012 noted the presence of two 2,000-gallon USTs filled with water and gasoline and two 3,000-gallon USTs filled with sand. *Id*. at ¶ 36; *see id*. at pp. 75-83. That second report concluded that contamination was migrating from the Texaco Station to Church and Darrow Streets and could possibly affect commercial and residential properties to the east. *Id*. at ¶ 37.

As a result of Texaco's conduct, the soil and groundwater at the Texaco Station and adjacent city-owned and privately-owned property are contaminated with petroleum, gasoline, and their byproducts, including benzene, toluene, ethylbenzene, xylene, polynuclear aromatic hydrocarbons, and lead. *Id*. at ¶¶ 5, 7-8. The contamination contains carcinogens. *Id*. at ¶ 11.

**Discussion**

I.     **Count I: RCRA Claim**

    A.     **Whether Count I Adequately Pleads a RCRA Claim**

RCRA allows any person to file a citizen suit "against any person … who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or

disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B); *see generally Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 486-87 (7th Cir. 2011). A § 6972(a) claim requires the plaintiff to show: "(1) that the defendant has generated solid or hazardous waste, (2) that the defendant is contributing or has contributed to the handling of this waste, and (3) that this waste may present an imminent and substantial danger to health or the environment." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972 (7th Cir. 2002). Chevron challenges only the third element, arguing that Evanston has not adequately alleged that the contamination at the Texaco Station presents an "imminent and substantial" threat because it has existed for fifty years, an ordinance prohibits extracting groundwater from wells, "most" of the station is covered by asphalt or concrete, and contaminated water has not reached the surface. Doc. 30 at 6-8.

Chevron's argument cannot be resolved in its favor at the pleading stage. Precedent holds that "[i]mminence does not require an existing harm, only an ongoing threat of future harm." *Albany Bank & Trust*, 310 F.3d at 972 (citation omitted). The amended complaint sufficiently alleges the threat of future harm, as it is plausible that contaminated subsurface water could migrate to the surface through the portions of the Texaco Station uncovered by asphalt or through adjacent properties to which the contamination has migrated and is migrating. It follows that the RCRA claim survives dismissal. *See Forest Park Nat'l Bank & Trust v. Ditchfield*, 881 F. Supp. 2d 949, 975-76 (N.D. Ill. 2012) (holding that even though no "traditional 'exposure pathways'" existed—an ordinance banned drinking groundwater, the surface residence was unoccupied, and the property was "largely covered in pavement"—imminence presented a question of fact where the plaintiff alleged that a dry cleaner left a contaminant underground).

### B. *Burford* Abstention

Chevron argues in the alternative that the court should abstain under the doctrine established by *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), from adjudicating the RCRA claim. Doc. 30 at 8-11. There are "two narrow situations in which federal courts may abstain under *Burford*." *Adkins*, 644 F.3d at 504. The first is when "a federal court … is faced with 'difficult questions of state law' that implicate significant state policies." *Ibid*. The second is "when concurrent federal jurisdiction would 'be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Ibid*. (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).

Chevron argues that the second basis of *Burford* abstention applies here because state regulations promulgated pursuant to the Illinois Environmental Protection Act ("IEPA"), 415 ILCS 5/1 *et seq*., "provide for the same relief that could be obtained under RCRA." Doc. 30 at 9-10. To support its submission, Chevron notes the IEPA "allows an aggrieved person to file a citizen's action … before the Illinois Pollution Control Board and may seek to require the responsible party to remediate the release … and to recover any investigation and cleanup costs." *Id*. at 10 (citing 415 ILCS 5/31(d)-(e), 5/33(b)).

Chevron's argument fails to persuade. As the Seventh Circuit has explained:

> [F]or this second basis of *Burford* abstention to apply, the mere existence of a statewide regulatory regime is not sufficient. The state must "offer some forum in which claims may be litigated," and this forum must "stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims." *Property & Casualty Insurance Ltd.* [*v. Cent. Nat'l Ins. Co. of Omaha*], 936 F.2d [319,] 323 [(7th Cir. 1991)]. In other words, judicial review by state courts *with specialized expertise* is a prerequisite to *Burford* abstention. See *International College of Surgeons* [*v. City of Chicago*], 153 F.3d [356,] 364 [(7th Cir. 1998)] (*Burford* abstention was not appropriate because any court of general jurisdiction could review final administrative decisions).

*Adkins*, 644 F.3d at 504. Thus, the fact that Illinois allows environmental claims to be pursued before a specialized administrative body, the Illinois Pollution Control Board, is not sufficient to warrant *Burford* abstention. Rather, *Burford* abstention is appropriate only if a state court "with *specialized expertise*," as opposed to a state court "of general jurisdiction," is available to review the administrative body's decisions. *Ibid.*; *see also Int'l Coll. of Surgeons*, 153 F.3d at 364 (holding *Burford* abstention inappropriate where a local landmarks commission's decisions were reviewed by a state court of general jurisdiction, the Circuit Court of Cook County, Illinois). The IEPA provides for judicial review of the Board's decisions in the Appellate Court of Illinois, *see* 415 ILCS 5/41(a), which is a court of general appellate jurisdiction, *see Buckley v. Ill. Judicial Inquiry Bd.*, 997 F.3d 224, 225 (7th Cir. 1993). It follows that *Burford* abstention is inappropriate here. *See Adkins*, 644 F.3d at 505 ("[*Burford*] teaches that judicial review must, by state legislative design, be concentrated in a few particular courts for its narrow abstention doctrine to be applicable. The Indiana courts of general jurisdiction do not satisfy this essential condition of *Burford* abstention. The mere existence of a state regulatory regime, even one providing an option for special masters and specific relief, does not permit federal courts to abstain.") (footnote and citation omitted).

    **C.**     **Civil Penalties and Expert Costs**

Chevron next argues that the court should strike Count I's request for "appropriate civil penalties." Doc. 30 at 11-12. RCRA's citizen suit provision authorizes district courts to "apply any appropriate civil penalties under section 6928(a) and (g) of this title." 42 U.S.C. § 6972(a); *see* 42 U.S.C. § 6928(a) (allowing for a civil penalty "not [to] exceed $25,000 per day of noncompliance for each violation"), (g) ("Any person who violates any requirement of this subchapter shall be liable to the United States for a civil penalty in an amount not to exceed

$25,000 for each such violation. Each day of such violation shall, for purposes of this subsection, constitute a separate violation."). Chevron maintains that civil penalties are available only in RCRA enforcement suits brought by the Administrator of the U.S. Environmental Protection Agency ("EPA") given that § 6928 is the section that authorizes such suits.

Although supported by *Village of Riverdale v. 138th Street Joint Venture*, 527 F. Supp. 2d 760, 768 (N.D. Ill. 2007), Chevron's reading of § 6972(a) is incorrect. By providing that the court in a RCRA citizen suit may "apply any appropriate civil penalties under sections 6298(a) and (g)," Congress made clear that such civil penalties may be awarded not only in enforcement suits brought by the EPA Administrator, but also in citizen suits. This conclusion follows from *U.S. Department of Energy v. Ohio*, 503 U.S. 607 (1992), where the Supreme Court addressed whether the United States had waived its sovereign immunity from civil penalties in citizen suits under RCRA and the Clean Water Act ("CWA"). The Court held that the United States had not waived its sovereign immunity; for present purposes, it is significant that the Court recognized that the "[RCRA and CWA citizen suit] sections' incorporation of their respective statutes' civil-penalties sections will have the effect of authorizing punitive fines when a polluter other than the United States is brought to a court by a citizen." *Id*. at 619. Here, Chevron allegedly is "a polluter other than the United States … brought to court by a citizen." It follows that Chevron is potentially liable for civil penalties authorized by § 6928(a) and (g). *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 58-59 (1987) (holding that the CWA citizen suit provision, which cross-references the civil penalty provision in the section authorizing CWA enforcement actions by the EPA Administrator, *see* 33 U.S.C. § 1365(a), "supports … our conclusion that citizens … may seek civil penalties … in a suit brought to enjoin or otherwise abate an ongoing violation"); *Chico Serv. Station, Inc. v. Sol*

*Puerto Rico Ltd.*, 633 F.3d 20, 28 (1st Cir. 2011) ("In hearing suits under [§ 6972(a)], district courts have statutory authority to … impose civil penalties."); *City of N. Chicago v. Hanovnikian*, 2006 WL 1519578, at *4 (N.D. Ill. May 30, 2006) (same); *see also Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1324 (7th Cir. 1992) (holding that § 6972(b)(1)(B) prohibits a RCRA citizen suit when the EPA is diligently prosecuting a RCRA action because, otherwise, a citizen suit "seek[ing] … civil penalties that the Administrator chose to forgo" would undermine the "federal agency['s] [role] as principal enforcer").

Chevron also argues that the court should strike in part Count I's request for expert fees. The RCRA citizen suit provision states that "[t]he court, in issuing any final order in any action brought pursuant to this section, … may award costs of litigation (including reasonable … expert witness fees) to the prevailing or substantially prevailing party." 42 U.S.C. § 6972(e). Chevron maintains the court should strike Evanston's request for the expert fees "relate[d] to the investigation that Evanston voluntarily undertook to attempt to delineate the nature of the waste." Doc. 30 at 11-12. Chevron is right that some expert costs, including those incurred in past voluntary cleanup efforts, are unrecoverable under RCRA. *See Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484-85 (1996) ("It is apparent from the two remedies described in § 6972(a) that RCRA's citizen suit provision is not directed at providing compensation for past cleanup efforts."). However, the precise nature of the expert costs sought by Evanston is unclear at this stage of the litigation. Once Evanston delineates the expert costs it seeks to recover, Chevron may renew its argument that some or all of those costs may not be recovered under RCRA.

## II.     Counts II-IV: Municipal and State Law Claims

### A.     Supplemental Jurisdiction

Because the RCRA claim survives dismissal, the court has supplemental jurisdiction over Evanston's municipal and state law claims pursuant to 28 U.S.C. § 1367(a). Relying on *Dublin Scarborough Improvement Association v. Harford County*, 678 F. Supp. 129 (D. Md. 1988), Defendants argue that the court should relinquish its supplement jurisdiction because the "primary goal of RCRA is best served if all state law claims are dismissed." Doc. 30 at 13; *see also* Doc. 39 at 6-7. It is true that *Dublin Scarborough Improvement Association* declined to exercise what was then called pendent jurisdiction over state law nuisance and trespass claims in a RCRA suit, primarily on the ground that the state law claims would be tried to a jury and the RCRA claims to the bench. 678 F. Supp. at 132. However, *Dublin Scarborough Improvement Association* was decided before Congress enacted the supplemental jurisdiction statute, 28 U.S.C. § 1367, and the court will apply that statute in deciding whether to retain supplemental jurisdiction over the non-federal claims.

Section 1367(c) permits the court to decline or relinquish supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Defendants barely acknowledge § 1367(c), let alone show that any of its four grounds apply here, and no such grounds are apparent in any event. All Defendants argue is that because Evanston's non-federal claims allow for a jury trial, adjudicating those claims

together with the RCRA claims, which are tried to the bench, will frustrate RCRA's goal of "the prompt abatement of imminent endangerment." Doc. 30 at 13; Doc. 37 at 10. The argument is without merit. Because Evanston's RCRA, state law, and municipal claims arise from the same facts, discovery can proceed simultaneously on them all. And the trial on all claims can proceed simultaneously as well, with the RCRA claims tried to the bench and the other claims to the jury. *See*, *e.g.*, *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1137 (7th Cir. 1992).

### B. Nuisance and Trespass Claims

Chevron alternatively argues that the amended complaint fails to plead viable nuisance and trespass claims. Doc. 30 at 14-15. Chevron is wrong on both counts.

"A private nuisance is a substantial invasion of another's interest in the use and enjoyment of his or her land." *In re Chi. Flood Litig.*, 680 N.E.2d 265, 277 (Ill. 1997); *see also Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010); *Helping Others Maintain Envtl. Standard v. Bos*, 941 N.E.2d 347, 367 (Ill. App. 2010). Under Illinois law, allegations that the defendant's conduct threatens the plaintiff's land with environmental contamination are sufficiently state a nuisance claim. *Vill. of Wilsonville v. SCA Servs., Inc.*, 426 N.E.2d 824, 836-37 (Ill. 1981) (holding that a chemical waste disposal site constituted a nuisance because it was "highly probable" that, "through migration" or other events, "highly toxic chemical wastes deposited at the site [could] escape and contaminate the air, water, or ground around the site"); *City of Chicago v. Latronica Asphalt & Grading, Inc.*, 805 N.E.2d 281, 288-89 (Ill. App. 2004) (holding that a waste dump constituted a nuisance because "[w]aste disposed of on the site could migrate onto adjacent properties through runoff from the site"); *People ex rel. Burris v. C.J.R. Processing, Inc.*, 647 N.E.2d 1035, 1039 (Ill. App. 1995) (holding a waste storage facility to be a nuisance because the plaintiff alleged that "unsealed waste material could

infiltrate nearby sewer systems and public water supplies in the event of a fire at [the defendant's] facility"); *Echternach v. D.H. Martin Petroleum Co.*, 1997 WL 627646, at *4 (N.D. Ill. Sept. 30, 1997) (finding a nuisance where petroleum leaked from the defendant's USTs "infiltrated the soil, sewer system, groundwater, surface water, and air"); *Dominick's Finer Foods Inc. v. Amoco Oil Co.*, 1993 WL 524808, at *1, *8 (N.D. Ill. Dec. 15, 1993) (finding a nuisance where gasoline, oil, and their byproducts leaked from the defendant's USTs into the plaintiff's land); *see also Willmschen v. Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1282-83 (Ill. App. 2005) (holding that public nuisances also constitute private nuisances "[w]hen the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land") (quoting Restatement (Second) Torts § 821C, cmt. e). By alleging that petroleum, gasoline, and their carcinogenic byproducts migrated and continue to migrate from the Texaco Station to Evanston's adjacent property, Doc. 24 at ¶¶ 7, 9-11, 30, 37-38, 45-46, the amended complaint states a viable nuisance claim.

Chevron responds that the interference necessary to state a nuisance claim under Illinois must be "something perceptible to the senses." *In re Chicago Flood Litig.*, 680 N.E.2d at 278. This argument fails for two reasons. First, the cases cited above make clear that groundwater pollution is a nuisance due to the possibility of its migrating to the plaintiff's land. Second, the gasoline and other substances allegedly migrating from the Texaco Station are perceptible to the senses. Although the substances remain underground, the City is alleged to own part of the affected property, Doc. 24 at ¶¶ 3-4, and Illinois law holds that "the owner in fee owns to the center of the earth." *Jilek v. Chi., Wilmington & Franklin Coal Co.*, 47 N.E.2d 96, 100 (Ill. 1943); *see also Kankakee Cnty. Bd. of Review v. Prop. Tax Appeal Bd.*, 871 N.E.2d 38, 47 (Ill. App. 2007) (same). The substances are perceptible at the place to which they have migrated.

Evanston's trespass claim also survives dismissal. "A trespass is an invasion in the exclusive possession and physical condition of land." *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 725 (Ill. App. 2004); *see also Muscarello*, 610 F.3d at 425; *Helping Others Maintain Envtl. Standards*, 941 N.E.2d at 367. Chevron argues that the amended complaint does not state a viable trespass claim because it fails to allege the alleged environmental contamination completely deprived Evanston the use of its land. Doc. 30 at 14 (arguing that the amended complaint "does not allege that the streets are not usable by Evanston or the public"). But a trespass claim does not require the plaintiff to allege and show total deprivation of the use of its land. *See Millers Mut. Ins. Ass'n of Ill. v. Graham Oil Co.*, 668 N.E.2d 223, 230 (Ill. App. 1996) ("Thus, as the *Pipefitters* [*Welfare Education Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037, 1041 (7th Cir. 1992),] court recognized, one need not intend to take possession of the encroached-upon premises or deprive occupants of their right to possess those premises to have committed a trespass under Illinois law."). Instead, a trespass claim may be premised on the defendant having caused "a thing … to enter the land of another … through a negligent act." *Ibid*. As the amended complaint alleges, the negligently leaked contaminants entered Evanston's property, interfering with its otherwise exclusive possession thereof. *See Zimmer v. Vill. of Willowbrook*, 610 N.E.2d 709, 714-15 (Ill. App. 1993) (citing cases) (holding that water flowing onto adjacent land constitutes trespass); *Vill. of Roxana v. Shell Oil Co.*, 2013 WL 4510164, at *5 (C.D. Ill. Aug. 26, 2013) (holding that pollution flowing onto the plaintiff's land is a trespass). That is all the amended complaint needs to do to plead a trespass claim.

### C. Statute of Limitations

Chevron next argues the non-federal claims are barred by the statute of limitations. Doc. 30 at 13. A five-year limitations period applies under Illinois law to claims seeking "to recover

damages for an injury done to property, real or personal … and all civil actions not otherwise provided for." 735 ILCS 5/13-205. The limitations period applies to the municipal ordinance claim as well as to the state law claims. *See Landis v. Marc Realty, L.L.C.*, 919 N.E.2d 300, 303-307 (Ill. 2009) (applying statutes of limitation in the Illinois Code of Civil Procedure to ordinance violation claims). The period does not run "until the injured party knows or should have known of [the] injury." *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 979 (Ill. 1981); *see also In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (Illinois law).

Evanston alleges that it did not learn of its alleged injuries until March 2012, when its consultant issued the first report. Doc. 24 at ¶ 35; Doc. 36 at 14. Chevron presents evidence to the contrary, Doc. 37-1, but that evidence adduces facts not referenced in the complaint and not subject to judicial notice, and thus not subject to consideration on a Rule 12(b)(6) motion. *See Geinosky*, 675 F.3d at 745 n.1 ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. If a moving party relies on additional materials, the motion must be converted to one for summary judgment under Rule 56.") (citations omitted). Given the amended complaint's allegation regarding when Evanston learned of its alleged injuries, the non-federal claims survive dismissal.

In any event, regardless of when Evanston became aware of its alleged injuries, the continuing violation doctrine would save its non-federal claims, at least in part, from dismissal on limitations grounds. "Under the 'continuing violation rule,' … where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 190 (Ill. 2002); *see also Northfield Ins. Co. v. City of Waukegan*,

13

701 F.3d 1124, 1132 (7th Cir. 2012) (Illinois law). Chevron argues Evanston's claims accrued fifty years ago, when contaminants leaked from two USTs, and that the continued release of contaminants onto city property "is a re-injury from past tortious conduct." Doc. 30 at 13; Doc. 37 at 12. It is true that "[a] continuing violation … is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Bank of Ravenswood v. City of Chicago*, 717 N.E.2d 478, 484 (Ill. App. 1999); *see also Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 435 (7th Cir. 2009) (Illinois law). But that principle is inapposite here because each discharge of contaminants onto the city's property constitutes a separate instance of nuisance and trespass. *See Meyers v. Kissner*, 594 N.E.2d 336, 340 (Ill. 1992) (holding that the defendant's levees, which continually washed onto the plaintiff's land, fell "within the ordinary rules applicable to continuing nuisances and continuing trespasses and [the] plaintiff is not barred from recovering monetary damages for the five-year period preceding the filing of the complaint"); *Raabe v. Messiah Evangelical Lutheran Church of Port Byron*, 615 N.E.2d 15, 18-19 (Ill. App. 1993) ("plaintiffs' cause of action arises each time flooding occurs, and plaintiffs may select their own time for bringing suit"). Given that the amended complaint alleges that contaminants continue to leak from the Texaco Station onto Evanston's property, Doc. 24 at ¶ 9, the continuing violation doctrine applies, at least at the pleadings stage.

    **D.**    **Punitive Damages**

Chevron asks the court to strike Evanston's request for punitive damages. Doc. 30 at 15. "Generally, punitive damages are awarded when the underlying tort is accompanied by aggravating circumstances such as willful, wanton, malicious, or oppressive conduct." *Chi. Title Land Trust Co. v. JS II, LLC*, 977 N.E.2d 198, 219 (Ill. App. 2012); *see also Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 947 (7th Cir. 2002) (Illinois law).

Evanston has plausibly alleged Chevron has knowingly allowed carcinogens to leak into the groundwater. Doc. 24 at ¶¶ 7, 9-10; Doc. 36 at 16-17. By permitting an inference that Chevron wantonly ignored a duty to control the contamination, the allegations are sufficient to ground Evanston's punitive damages request at the pleading stage. *See Rodria v. Seiber*, 551 N.E.2d 772, 775 (Ill. App. 1990) (holding that a willful and wanton trespass supports punitive damages); *First Nat'l Bank of Des Plaines v. Amco Eng'g Co.*, 335 N.E.2d 591, 593-94 (Ill. App. 1975) (recognizing that punitive damages may be awarded for an intentional trespass).

### III. Chevron Corporation and Chevron EMC

Finally, Chevron argues Chevron Corporation and Chevron EMC are not proper defendants. Chevron submits that because Texaco maintained a separate corporate existence as "a wholly-owned, indirect subsidiary of Chevron Corporation" after it merged with a Chevron subsidiary in 2001, Texaco is the only proper defendant for the alleged misconduct at the Texaco Station. Doc. 30 at 16-17 & n.4. Chevron may turn out to be right; a 2001 Securities and Exchange Commission filing shows that Texaco, Inc. was the "name of the surviving corporation" after the merger. Doc. 30-4 at 6.

However, Evanston counters with the plausible allegation that the merger produced ChevronTexaco, which changed its name to Chevron Corporation in 2005. Doc. 24 at ¶ 14; Doc. 36 at 18. Additionally, Evanston notes that Chevron EMC's "corporate purpose is to manage Chevron's environmental remediation activities and associated liabilities." Doc. 36 at 19; *see also* Doc. 36-1 at 39, 43, 45. Evanston supports its argument with materials attached to its response brief, which can be considered on a Rule 12(b)(6) motion because Evanston is the non-movant. *See Geinosky*, 675 F.3d at 745 n.1. Those materials include a statement from Chevron's website stating that on "Oct. 9, 2001, the shareholders of Chevron and Texaco voted

15

to approve the merger, and ChevronTexaco Corp. began doing business that same day," and another stating that "[i]n 2001, our two companies [Chevron and Texaco] merged to form ChevronTexaco. The name was changed to Chevron in 2005 to convey a clearer, stronger and more unified presence around the world." Doc. 36-1 at 8, 10.

Evanston's allegations and supplemental materials make it plausible that Chevron Corporation and Chevron EMC are proper defendants, which means that the court cannot determine on the pleadings whether Texaco is the only appropriate defendant in the corporate family. It bears mention that keeping the three Chevron entity defendants in the case at this stage will cause little additional cost, as all three are sharing counsel and filing joint briefs.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is denied. Defendants shall answer the amended complaint by March 14, 2014.

February 21, 2014

_____
United States District Judge